UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                                :
**ALICIA LITHA SMITH**,                                         :
                                                                :
                Plaintiff,  :
                                                                :  **MEMORANDUM DECISION**
        – against –                    :  **AND ORDER**
                                                                :
**COMMISSIONER OF SOCIAL SECURITY**,                            :  19-CV-5361 (AMD)
                                                                :
                Defendant.  :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff seeks review of the Social Security Commissioner's decision that she was not disabled for the purpose of receiving benefits under Titles II and XVI of the Social Security Act. For the reasons that follow, I remand the case for further proceedings.

## BACKGROUND

      On January 5, 2015, the plaintiff applied for disability insurance benefits and supplemental security income, alleging disability because of major depression, scoliosis, arthritis and asthma, with an onset date of January 1, 2014. (Tr. 420-21, 423-28, 449.)

      After her claims were denied, the plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ"). (Tr. 224-27.) ALJ Seth Grossman held a hearing at which a vocational expert, two medical experts and the plaintiff, who was represented by counsel, testified. (Tr. 127-50.)[1] In an August 17, 2018 decision, the ALJ denied the plaintiff's claim for benefits. (Tr. 189-208.) He determined that the plaintiff had the following severe impairments: "back disorder, scoliosis, right knee disorder, bipolar disorder, and post traumatic stress disorder," but that none of these impairments met or equaled the applicable listings. (Tr. 194-95.) He concluded that the plaintiff had "the residual functional capacity to perform sedentary

---

[1] The hearing before ALJ Grossman was held over the course of three days.

work as defined in 20 CFR 404.1567(a) and 416.967(a)," but was "limited to performing simple unskilled tasks." (Tr. 196.) He found that although the plaintiff was not capable of performing her past relevant work, she could perform other jobs in the national economy. (Tr. 201-02.)

The plaintiff asked the Appeals Council to review ALJ Grossman's decision, and on January 15, 2019, the Appeals Council granted the plaintiff's request and remanded the case. (Tr. 209-14.) In its remand order, the Appeals Council directed that an ALJ "[f]urther evaluate the plaintiff's mental impairments," "[g]ive further consideration to the plaintiff's maximum residual functional capacity," and, if necessary, "obtain supplemental evidence from a vocational expert." (*Id.*; *see also* Tr. 15.)

On July 18, 2019, ALJ Sommattie Ramrup held a new hearing at which a second vocational expert and the plaintiff, who was represented by counsel, testified. (Tr. 151-75.) In a July 31, 2019 decision, the ALJ denied the plaintiff's claim for benefits. (Tr. 12-41.) She determined that the plaintiff had the following severe impairments: "bipolar disorder, generalized anxiety disorder, major depressive disorder, borderline personality disorder, schizoaffective disorder, degenerative disc disease with scoliosis, status-post right shoulder surgery, and asthma," but that none of these impairments met or equaled the applicable listings. (Tr. 18-21.) She concluded that the plaintiff had "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)" with limitations: she could perform "simple, routine work in a non-production paced setting," and could "occasionally interact with coworkers, supervisors, and the public." (Tr. 21.) She could "occasionally stoop, kneel, crouch, and crawl," "occasionally climb stairs and ramps" but not "ladders, ropes, or scaffolds," and "frequently reach with her right, dominant upper extremity," and she could have "occasional

exposure to pulmonary irritants, such as dust, odors, and fumes." (*Id.*) The ALJ found that the plaintiff could perform jobs in the national economy. (Tr. 33-34.)

On September 10, 2019, the Appeals Council denied the plaintiff's request for review. (Tr. 1-6.) The plaintiff filed this action on September 17, 2019 (ECF No. 1), and both parties moved for judgment on the pleadings (ECF Nos. 13, 19).

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,'" the court will not "simply defer[]" "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984)). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009).

## DISCUSSION

The plaintiff claims that the ALJ's decision is "not supported by substantial evidence" and was not based on a "full and fair evaluation of the entire record." She challenges the ALJ's

3

evaluation of the medical opinions and the plaintiff's credibility. She also challenges the ALJ's step five analysis. (ECF No. 20 at 3-9.) The defendant maintains that the ALJ's decision was supported by substantial evidence and is free of legal error. (ECF No. 14 at 23-33.)

## I.     RFC Determination

### a.  Medical Evidence

The plaintiff claims that the ALJ did not properly evaluate the medical evidence in making her RFC determination. Specifically, she claims that the ALJ should have considered the opinion of psychiatric medical expert Dr. Rita Clark, who testified before ALJ Seth Grossman in June of 2017. The plaintiff also asserts that the ALJ did not make a full inquiry "of the treating and examining doctors" about the plaintiff's limitations. (ECF No. 20 at 2-3, 7; *see* Tr. 106-22.)[2]

The record includes medical records and opinions from many sources. Two treating physicians provided opinions: Dr. Tatyana Braslavskaya, a primary care doctor who first saw the plaintiff in 2015 or 2016, and Dr. Jean Bien-Aime, a psychiatrist who began treating the plaintiff in 2015.[3] (Tr. 668, 731, 797-800, 802-807, 908-909, 911.)[4] The record also includes opinions from consultative examiners. (*See* Tr. 29-32.)

---

[2] The plaintiff challenges the ALJ's decision to give Dr. Clark's opinion no weight by omission. Dr. Clark testified that she thought the plaintiff was a "vulnerable person" who could not "take occupational stress without decompensating." (Tr. 119.) The plaintiff's focus on Dr. Clark's testimony is somewhat misplaced, since Dr. Clark was not a treating physician, and the ALJ "does not have to state on the record every reason justifying a decision" or "discuss every piece of evidence submitted." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation and quotation marks omitted). It is not clear, however, why the ALJ chose to analyze the testimony of Dr. Carlos Jusino-Berrios, who testified at the same hearing, but not that of Dr. Clark. (*See* Tr. 32.)

[3] Dr. Bien-Aime provided two opinions, one in 2017 and the second in 2019.

[4] Dr. Braslavskaya stated that she began treating the plaintiff in 2015, but the earliest medical records in the administrative record are from 2016. (*See* Tr. 731, 797.)

Dr. Bien-Aime saw the plaintiff every month, beginning in June of 2015. (Tr. 911.)[5] In a questionnaire dated March 1, 2017, he opined that the plaintiff's bipolar disorder, PTSD and borderline personality traits "seriously limited" her ability to "maintain attention" for a two hour segment, "ask simple questions or request assistance," "accept instructions and respond appropriately to criticism," "get along with co-workers or peers," "respond appropriately to changes in a routine work setting," "deal with normal work stress," "deal with stress of semiskilled and skilled work," and "travel in [an] unfamiliar place." (Tr. 804-05.) He opined that the plaintiff would be absent from work about three days per month. (Tr. 807.) In a medical source statement dated May 1, 2019, Dr. Bien-Aime opined that the plaintiff had "marked limitations" understanding and remembering both simple and detailed instructions, carrying out detailed instructions, interacting appropriately with the public, supervisors and coworkers, and responding appropriately in a work setting. (Tr. 908-09.) He stated that during depressive phases the plaintiff "does not have energy and drive to get out of bed," that her response to stress is "unpredictable," and that she can become "agitated" and lose focus and concentration. (Tr. 909.)

In a medical source statement dated February 17, 2017, Dr. Braslavskaya opined that the plaintiff could sit and stand or walk for about four hours a day; she "need[ed] a job that permits shifting positions," and "periods of walking"—ten minutes every hour—during the work day. (Tr. 798.) She opined that the plaintiff's impairments were "likely to produce 'good days' and 'bad days,'" and that the plaintiff would likely be absent from work more than four days a month. (Tr. 800.)

---

[5] In one opinion, Dr. Bien-Aime stated that he had weekly contact with the plaintiff. (Tr. 802.)

5

In a consultative orthopedic exam report dated March 3, 2015, Dr. Chaim Shtock opined that the plaintiff had "mild limitation[s]" doing heavy lifting, standing and sitting long periods, squatting and kneeling, "mild to moderate limitation[s]" climbing stairs frequently and walking long distances, "moderate limitation[s]" crouching and doing frequent bending, and no limitations "performing overhead activities" and using her arms and hands for fine and gross manual activities. (Tr. 596-99.) He noted the plaintiff's history of bipolar disorder, depression and anxiety, but opined only on her physical conditions. (*See id.*)

ALJ Ramrup gave "partial weight" to both of Dr. Bien-Aime's opinions and "limited weight" to Dr. Braslavskaya's opinion, and gave "significant weight" to only one opinion: consultative examiner Dr. Shtock's March 2015 opinion. (Tr. 29-32.)

ALJ Ramrup noted Dr. Bien-Aime's "longitudinal familiarity" with the plaintiff, but gave his opinions partial weight because the treatment notes reflected "clinical observations that were generally within normal limits, aside from mood and affect on some occasions," and therefore did "not support a finding of marked limitations" or that the plaintiff "would be absent from work about three days per month." (Tr. 30-31.) The ALJ cited treatment records that showed the plaintiff's "improvement with medication without side effects when the [plaintiff] is compliant with it," and the plaintiff's daily activities, including "caring for her children, taking her daughter to school, talking on the phone," and "traveling." (Tr. 31.)

Similarly, the ALJ noted Dr. Braslavskaya's "longitudinal familiarity" with the plaintiff, but gave her opinion limited weight because "the specific limitations she described . . . [were] entirely inconsistent with her treatment records that reflect clinical observations that were within normal limits and denials of complaints from the [plaintiff]." (Tr. 29.) While the ALJ referred to records documenting the plaintiff's physical conditions, she did not address Dr.

6

Braslavskaya's conclusion that the plaintiff would have "good days" and "bad days" and be absent from work more than four days a month, or whether that conclusion was consistent with the record. (*See id.*)

The treating physician rule "requires that the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record." *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order). If the ALJ decides that the treating physician's opinion does not merit controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted); *accord* 20 C.F.R. § 404.1527. The factors that the ALJ "must consider" include:

> (i) The frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord* 20 C.F.R. § 404.1527. Failure to provide "good reasons" for the weight assigned to a treating physician's opinion is a ground for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand") (internal citations omitted).

Both doctors' records include notes and observations suggesting that the plaintiff could function normally at times, but also include references to the plaintiff's struggle to function at

7

other times.  For example, on August 10, 2016, Dr. Bien-Aime noted that the plaintiff was not taking her medication regularly, and that "some days, she is down, other days, she is hyperactive and agitated."  (Tr. 696.)  On January 27, 2017, the doctor noted that the plaintiff was "angry," "not engaged," and "stressed out," and that she reported a "verbal altercation with her sister" and was considering dropping out of school.  (Tr. 722.)  On June 15, 2017, the doctor noted that the plaintiff had been "feeling depressed for no reason," "crying," and "feeling easily frustrated," and observed that the plaintiff was "distant, not engaged, [and] mildly agitated" with a sad mood and restricted affect.  (Tr. 851.)  On November 20, 2017, the plaintiff was "feeling ok" but reported that she forgot appointments and had difficulty concentrating.  (Tr. 831.)  On November 15, 2018, the doctor noted the plaintiff's reports that she felt "sad," was "crying a lot," had "no motivation" and "no interest," and had difficulty concentrating and sleeping.  (Tr. 979.)  The record also includes reports of unscheduled "crisis" evaluations and assessments.  (*See, e.g.*, Tr. 687-88, 787-88.)

      The opinions of both treating physicians appear to be generally consistent with each other, including with respect to the plaintiff's inability to work without missing multiple days a month.  Indeed, the ALJ acknowledged in her decision that "the record indicates that the [plaintiff] has had difficulty with depressive symptomatology at times but denied such symptomatology at other times."  (Tr. 25.)

      For these reasons, the ALJ should have sought clarification from the doctors about perceived discrepancies before giving their opinions less than controlling weight.  *See McGill v. Saul*, No. 18-CV-6430, 2020 WL 729774, at *4 (E.D.N.Y. Feb. 13, 2020) ("The ALJ, while acknowledging that [two doctors] were Plaintiff's treating physicians, accorded 'partial weight' to their opinions because they 'did not provide any basis or reasoning to support their respective

8

opinions.' However, since the ALJ deemed the treating physicians' opinions lacking in support, the ALJ should have sought clarification from them regarding the deficiencies she perceived in their opinions. . . . The ALJ is not permitted to cherry pick from the treatment record only evidence that is inconsistent with the treating source's opinion in order to conclude that the opinion should be accorded less weight.") (quoting the record) (citations and quotation marks omitted); *Sena v. Berryhill*, No. 17-CV-912, 2018 WL 3854771, at *9 (D. Conn. Aug. 14, 2018) ("It is well-settled that an ALJ may not 'cherry-pick' evidence by 'improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.'") (quoting *Rodriguez v. Colvin*, No. 13-CV-1195, 2016 WL 3023972, at *2 (D. Conn. May 25, 2016)).

Moreover, although the ALJ cited medical evidence and opinions in her decision, she gave significant weight to only one opinion—a consultative opinion from 2015. (*See* Tr. 29-32.)[6] The ALJ appears to have based her decision to give the treating doctors' opinions less than controlling weight on her own review of the medical records. *See Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) ("An ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion."); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 121 (2d Cir. 2018) (summary order) ("Neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion. While a physician's opinion might contain inconsistencies and be subject to attack, a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.") (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)) (citations, quotation marks and alterations omitted).

---

[6] Moreover, Dr. Bien-Aime's findings of "marked limitations" in his 2019 opinion suggest that the plaintiff's condition might have worsened over time.

9

### b. Credibility Determination

The ALJ determined that the plaintiff's medical impairments "could reasonably be expected to cause the alleged symptoms," but concluded that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22.) On remand, the ALJ should reassess the plaintiff's statements after revisiting her review of the medical evidence.

For example, the plaintiff testified that it was hard for her "to cope with people telling [her] what to do without crying." (Tr. 159.) She testified about her difficulty being around people and "taking orders, following directions, and understanding . . . tasks." (Tr. 166-67.) The ALJ cited records from 2018 and 2019—including from Dr. Bien-Aime and others—that discuss the plaintiff's struggles with "random mood swings and some depression," and her reports that she felt "angry, depressed, and overwhelmed" and had "difficulty concentrating." (*See* Tr. 25.)

If the ALJ determines that the plaintiff's allegations are not supported by "objective medical evidence, the ALJ must engage in a credibility inquiry." *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 306 (E.D.N.Y. 2017) (citation and quotations omitted). The ALJ should explain why the plaintiff's testimony is inconsistent with the record, and "must include specific reasons" for the credibility finding. *See Woodcock v. Comm'r of Soc. Sec.*, 287 F. Supp. 3d 175, 176 (E.D.N.Y. 2017).

## II. Step Five Analysis

"A vocational expert's testimony does not constitute substantial evidence where the ALJ asks about a hypothetical claimant whose limitations do not actually mirror those of the claimant." *Baker v. Berryhill*, No. 17-CV-8433, 2019 WL 1062110, at *35 (S.D.N.Y. Feb. 19, 2019), *report and recommendation adopted*, 2019 WL 1059997 (S.D.N.Y. Mar. 6, 2019); *see*

*also Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (the Commissioner may rely on a vocational expert's opinions concerning a hypothetical claimant so long as the ALJ's hypothetical mirrors the plaintiff's RFC and is based on substantial evidence).

During the hearing, the vocational expert testified that a hypothetical claimant who, among other things, could "occasionally interact with coworkers, supervisors, and the general public" could perform jobs in the national economy. (Tr. 171-72.) The vocational expert testified that if the person "is absent one day per month, he or she is likely to be terminated," and that if the individual is "unable to interact with supervisors, coworkers, or the public," he or she could not perform any jobs. (Tr. 172-74.)

As discussed above, the ALJ should reassess the medical evidence and the plaintiff's residual functional capacity, including how often the plaintiff would be absent from work. If the ALJ finds that the plaintiff's limitations are different from those of the hypothetical claimant upon whom she based her conclusions at step five, she should revisit her assessment and, if necessary, ask the vocational expert to reevaluate the plaintiff's vocational options.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                      s/Ann M. Donnelly
                      ANN M. DONNELLY
                      United States District Judge

Dated: Brooklyn, New York
    March 26, 2021